CHARLES B. SCHEIDER et al., trustees, &c., appellants,

*v.*

J. H. THAYER MARTIN, State Tax Commissioner, respondent.

In the matter of the estate of HENRY SCHEIDER, deceased.

[Decided June 22d, 1939.]

*Messrs. Hood, Lafferty & Campbell,* for the appellants.

*Mr. David T. Wilentz,* attorney-general, and *Mr. William A. Moore,* assistant attorney-general, for the respondent.

BUCHANAN, VICE-ORDINARY.

The petitioners, as executors and trustees of the estate of Henry Scheider, deceased, appeal from the transfer inheritance tax levied under *R. S. 54:34-1,* in respect to an *inter vivos* transfer made by decedent.

Decedent executed and delivered on February 18th, 1927, deed of trust whereby he conveyed to trustees bonds and mortgages of an aggregate value of $202,679.52, in trust to pay the income of a one-fifth share thereof to each of his five children during their lives. Alternate contingent remainders were therein given (1) to the testamentary appointees of each child who shall have married and shall leave a wife or husband and/or issue surviving; and (2) to the surviving brother and sisters of each child who shall not have married, or having married, shall have left neither a wife or husband or issue surviving. Each child was privileged to draw annually from the principal of his share a sum not exceeding $2\frac{1}{2}\%$ thereof, and decedent reserved the right to add to the fund transferred further securities to be held under the trust agreement.

Two years later, on the day preceding his marriage to Mary T. Wagner, May 13th, 1929, decedent executed his last will and testament; and five years later, August 15th, 1934, he died, aged 75, leaving an estate (not including the trust fund) of approximately $300,000 which passed under his will. The levy of transfer inheritance tax with respect to this testamentary estate is not in dispute.

Appellants contend that the act of the commissioner in assessing tax in respect to the aforesaid *inter vivos* transfer was erroneous because (they claim) (1) the transfer was not made in contemplation of death; and (2) if decedent contemplated death at the time of the transfer, it was contemplation of death in the distant future, and therefore the transfer is not taxable under a proper construction of the statute.

Assuming, *arguendo,* that decedent, at the time of the transfer *inter vivos,* had no greater or other contemplation or anticipation of death than he would have had if he had been twenty or thirty years younger and had always been in perfect health, that fact would not prevent the transfer from being taxable as one made in contemplation of death, under the provisions of the statute. Under the intent and meaning of the statute a gift *inter vivos* is taxable as being made in contemplation of death, if it is a transfer or gift intended in the place and stead of a testamentary disposition,—if it is

made as the result of the donor's contemplation of the fact that death will ultimately come to him, and with the intent and for the purpose of accomplishing by such gift, in the place and stead of such transfer as would otherwise be accomplished at his death by testamentary transfer or intestate succession, a transfer of the same general type or nature as that which is accomplished by testamentary gift. A gift may be so made, utterly irrespective of whatever may be the donor's age, condition of health or apprehension of the imminence of death. *Schweinler* v. *Thayer Martin, 117 N. J. Eq. 67.*

In the instant case there is little, if any, direct testimony of any weight or value, as to decedent's intent, purpose or impelling motive in making the gift. His son, Charles, says he *thinks* the reason for making it was "in contemplation of re-marriage;" "I *felt* that he wanted us to have our own independence from him." The three daughters expressly make no change or amplification with regard to this testimony; the daughter Lulu says, (without stating how she knows) that the reason for the trust deed was "because he expected to re-marry and thought best to make us a little more independent." The widow (prospective bride at the execution of the trust deed) says only that decedent told her that "he wanted them to have that."

Decedent's acts and the attendant circumstances, together with the normal and rationally probable inferences derivable therefrom, are however competent evidence to be considered in determining the issue in question. *Cf. Schweinler* v. *Thayer Martin, supra,* at *p. 82.*

We have, in the instant case, the intrinsic evidence of the provisions of the deed of trust itself, the facts of decedent's age, the condition of his health, the persons who would be the natural objects of his bounty, his contemplated re-marriage, his subsequent will, the approximate amount of his assets, and certain other facts relevant and material to this issue,— all of which were before the commissioner.

Omitting consideration of his condition of health, for the present, the gift was made when he was well advanced in years; to or for the benefit of the persons who would be the natural objects of his testamentary bounty,—(his son and

daughters),—and who were in fact subsequently (together with his subsequently married wife) the objects of his testamentary bounty; it comprised over $200,000 in value, which was a little over forty per cent. of his entire assets; there is no evidence that he had been accustomed to making prior gifts, or had ever made any prior gifts of any consequence, to these donees, either by way of adding to the principal of the assets they may have had or by way of supplementing any income they may have had; and he was expecting to re-marry in the near future.

Moreover the provisions in the deed of trust are such as are ordinarily made in testamentary dispositions; the children are given not only the income for their lives, but also the right to certain annual amounts of principal, and provision is made for the disposition of the remainder interests to testamentary appointees of the children, under certain contingencies,—and these provisions are, broadly speaking, similar to the provisions of his will executed two years later.

Under all these circumstances it seems clear that the commissioner would have been amply justified,—even without considering the state of decedent's health,—in his finding that the gift in question was made in contemplation of death. *Schweinler* v. *Thayer Martin, supra.*

There was before the commissioner, however, evidence as to decedent's condition of health which further tends to support this conclusion, and amply to justify a finding that at the execution of the truth deed, decedent's contemplation of death was not that it was a matter of the indefinite and probably distant future, but rather that it was a thing which he had reason to apprehend might happen at any time.

Not only was decedent 68 years old,—he was suffering from a chronic heart ailment which seven years later caused his death. He knew he had this heart ailment, and had had it for some eight years; and that because of it he had to avoid over-exercise and fatigue; he tired quickly and suffered from chest and leg pains. He had also had some intestinal ailment, and high blood pressure.

Aside from the contemplation of re-marriage, the situation in the instant case is substantially the same as that in *In re*

*Fischesser, 14 N. J. Mis. R. 815, 187 Atl. Rep. 648,* in which the gift was held taxable both by this court and the Supreme Court.

Appellants argue that the decedent's contemplation of re-marriage proves that the gift was not made in contemplation of death. This seems clearly a *non-sequitur.* That the prospective re-marriage was a factor in his considerations as to the desirability of making the trust deed is undoubtedly true, but it does not follow therefrom that the deed was not made in lieu of a testamentary disposition. The contrary is indeed much more probable. It would be quite likely that he considered that it was quite possible that subsequent to his re-marriage he might be led to make a testamentary disposition of his estate which would not be as generous to his children as he then presently felt disposed, and that therefore it would be well for him to make then presently a trust gift *inter vivos,* which could not subsequently be changed, in lieu, *pro tanto,* of a testamentary provision for his children.

The tax under review will be affirmed.